

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MAGISTRATE JUDGE
JOHNSON

SHIRIONIT HOSEM SECURITY
MANUFACTURING (1991), LTD.,
an Israeli corporation

    Plaintiff,

vs.

SONNY KAHN, individually,
SHLOMO EPSTEIN, individually,
JONATHAN DRUCHMAN, individually,

    Defendants.

Case No. 96-3476

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Shirionit Hosem Security Manufacturing (1991), Ltd. ("Shirionit"), brings this Complaint against Sonny Kahn ("Kahn"), Shlomo Epstein ("Epstein") and Jonathan Druchman ("Druchman") and alleges as follows:

1. Plaintiff, Shirionit, is an Israeli company with offices in Tel Aviv, Israel.

2. Defendant Kahn is a resident of Miami, Florida.

3. Defendant Druchman is a resident of Miami, Florida.

4. Defendant Epstein is a resident of Miami, Florida.

5. The jurisdiction of this Court is based on 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds fifty thousand dollars ($50,000.00).



6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and pursuant to the local rules of the United States District Court for the Southern District of Florida.

7. All conditions necessary to the maintenance of this action have occurred, have been waived, or have been performed.

## GENERAL ALLEGATIONS

8. In December 1994, Kahn approached representatives of Shirionit in Israel with a proposal that he would, if Shirionit expressed an interest in such a proposal, form a business entity to be the exclusive agent of Shirionit for the sale and distribution in the United States of locks manufactured by it.

9. During the course of these initial meetings with Shirionit, Kahn represented repeatedly that he and his associates, Epstein and Druchman, had the experience and the resources to form a business entity which would be capable of serving in the capacity of an exclusive distributor for Shirionit.

10. After receiving an oral agreement from Shirionit that it would send representatives to the United States to negotiate a sales distribution contract, Kahn returned to Miami and on February 23, 1995, incorporated Crescent Lock International, Inc. ("Crescent Lock").

11. In early March 1995, Shirionit sent representatives to Miami to negotiate and draft a sales distribution contract with the newly-formed entity,

2

Crescent Lock. The negotiating parties, all of whom spoke Hebrew fluently, negotiated a contract in Hebrew. During the course of the negotiations, Kahn, Epstein and Druchman repeatedly represented to Shirionit's representatives that Crescent Lock would be well-capitalized, well-positioned and fully capable of acting as an exclusive distributor of Shirionit's locks.

12. At one point in the negotiations, Kahn, Epstein and Druchman presented to Shirionit's representatives a copy of Crescent Lock's Shareholder Agreement. As reflected in Shareholder Agreement, Kahn, Epstein and Druchman represented that they were investing seven hundred thousand dollars ($700,000.00) into Crescent Lock and, also reflected in the Shareholder Agreement, were prepared to provide an additional contribution to be voted on by the board of directors of one million five hundred thousand dollars ($1,500,000.00) should it prove necessary for operations. A true and correct copy of the Shareholder Agreement is attached hereto as Exhibit A.

13. Also during the course of negotiations, Kahn, Epstein and Druchman took Shirionit's representative to a facility owned by Druchman, which Kahn, Epstein and Druchman stated they would convert to a distribution center in the event Shirionit agreed that Crescent Lock would serve as an exclusive distributor for Shirionit.

3

14. Kahn, as spokesman for himself, Epstein and Druchman, further promised that he would use his considerable media and marketing experience on behalf of Crescent Lock to successfully market and distribute Shirionit's locks.

15. After several days of intensive negotiations, and based on the representations made by Kahn, Epstein and Druchman, the parties executed a Memorandum of Agreement which was in Hebrew. A true and correct copy of the Memorandum of Agreement is attached hereto as Exhibit B.

16. The Memorandum of Agreement included all the material terms and obligations by and between the parties for Crescent Lock to serve as the exclusive distributor of Shirionit's locks in the United States.

17. The Memorandum of Agreement provided that it would become effective upon approval of the board of directors of Shirionit. The Memorandum of Agreement further provided that after approval by Shirionit's board of directors, it would be a valid and binding determination of the parties' rights and obligations until such time that a more detailed agreement would be drafted. Once a detailed agreement was drafted and adopted as to form, it was to supersede the Memorandum of Agreement.

18. Immediately after concluding the Hebrew version of the Memorandum of Agreement, Crescent Lock then suggested that the parties should begin translating their contract into English so as to have an English version available; however, because the parties had reached an agreement which was subject only

4

to the condition that Shirionit's board of directors approve the contract, Shirionit suggested, and Crescent Lock accepted, the proposition that after approval by its board of directors, Shirionit would have the contract translated and then offered for review to Crescent Lock.

19. Accordingly, the parties signed a "Document" which references the Memorandum of Agreement reached by the parties and expresses their intent to also sign an English translation after approval by respective counsel. This translation and subsequent approval of the translation by counsel for the parties was the only condition to the parties' agreement. A true and correct copy of the Document is attached hereto as Exhibit C.

20. On March 23, 1995, Shirionit's board of directors approved the Memorandum of Agreement. Immediately thereafter, Shirionit had the Memorandum of Agreement translated into English. A true and correct copy of the English translation of the Memorandum of Agreement is attached hereto as Exhibit D.

21. On March 23, 1995, Shirionit, sent a letter to Crescent Lock advising it that Shirionit's board of directors had approved the Memorandum of Agreement, and reminding Crescent Lock that the contract was now binding and effective. In addition, Shirionit provided that it would begin drafting a more detailed contract as contemplated under the Memorandum of Agreement, and enclosed the English translation of the Memorandum of Agreement.

22. On May 17, 1995, counsel for Crescent Lock, Abraham Galbult, purported to advise Shirionit that Crescent Lock had "decided not to proceed" under the contract based on alleged but unspecified additional terms to the contract.

23. On June 6, 1995, Shirionit responded stating that no additional terms or proposals had been provided, and demanding that Crescent Lock abide by its obligations under the Memorandum of Agreement.

24. During this period, and unbeknownst to Shirionit, Kahn, Epstein and Druchman began negotiations with Shirionit's major Israeli competitor, Mul-T-Lock, Inc. ("Mul-T-Lock"). Kahn, Epstein and Druchman, at a time when they had been provided with Shirionit's confidential pricing and sales information, thus attempted to negotiate a contract with Mul-T-Lock to allow them to serve as an exclusive distributor in the United States for Mul-T-Lock, under terms which were more favorable to them than those they had agreed upon with Shirionit.

25. On June 6, 1995, the president of Mul-T-Lock forwarded a draft contract for Crescent Lock to serve as the distributor of locks in the United States to Kahn.

26. In an apparent attempt to avoid the claims of Shirionit, Kahn, Epstein and Druchman on July 10, 1995, incorporated Lock-It in order to serve in the capacity of exclusive distributor pursuant to the agreement Kahn, Epstein and Druchman were negotiating with Mul-T-Lock.

6

27. Kahn, Epstein and Druchman, who were the only shareholders and officers of Crescent Lock also became the only shareholders and officers of Lock-It.

28. Upon information and belief, the assets and employees of Crescent Lock were at this time transferred to Lock-It. Additionally, Lock-It operated out of the identical physical location as Crescent Lock, and also used the identical phone line(s).

29. On or about July 14, 1995, Crescent Lock filed a complaint in state court (the "Crescent Lock Action") against Shirionit seeking a declaratory judgment that it did not have a contract with Shirionit. Crescent Lock did not, however, attempt to effectuate process on Shirionit.

30. During this period, Kahn, Epstein and Druchman continued to negotiate with Mul-T-Lock for an acceptable distribution contract. Several drafts of the contract were exchanged between these parties.

31. While drafts of the contract were continuing to be exchanged between Mul-T-Lock and themselves; Kahn, Epstein and Druchman began ordering shipments of locks and related supplies. Mul-T-Lock shipped the locks and related materials to Crescent Lock and Kahn, Epstein and Druchman had Lock-It pay for the materials.

32. On December 5, 1995, Shirionit removed the Crescent Lock Action to the Federal Court for the Southern District of Florida, and counterclaimed for

7

breach of contract in a case styled Crescent Lock International v. Shirionit Hosem Security Manufacturing (1991) Ltd., 95-2724-CIV-Moreno.

33.     On or about January 11, 1996 Lock-It entered into a contract for the distribution of locks with Mul-T-Lock.

34.     On August 22, 1996 Crescent Lock filed a Suggestion of Bankrupcty. Subsequent to the bankruptcy filing and a motion filed by Crescent Lock, Judge Moreno entered an order dismissing the Crescent Lock Action and Shirionit's counterclaim on or about October 21, 1996.

## COUNT I

## FRAUD IN THE INDUCEMENT AGAINST KAHN, EPSTEIN, DRUCHMAN

35.     Shirionit reincorporates and realleges the allegations of paragraphs 1 through 34 of this Complaint as though fully set forth herein.

36.     During the course of the negotiations for the Memorandum of Agreement, Kahn, Epstein and Druchman represented that they had the capacity, experience and resources to form a business entity to serve as an exclusive distributor for Shirionit including representations that (a) they would invest an initial $700,000 into Crescent Lock and would, upon demand and pursuant to the Shareholder Agreement, also invest up to an additional $1.5 million; and (b) they would utilize Kahn's marketing experience and resources and Druchman's facility for Crescent Lock to serve as Shirionit's exclusive distributor.

8

37. Such representations were untrue at the time they were made to Shirionit and were known to be untrue by Kahn, Druchman and Epstein.

38. Such representations were intended by Kahn, Druchman and Epstein to induce Shirionit to enter into the Memorandum of Agreement with Crescent Lock.

39. Shirionit justifiably relied on the representations and would not have agreed to enter into the Memorandum of Agreement but for said representations.

40. Shirionit was damaged by the representations in that it was induced to enter into the Memorandum of Agreement and incurred significant expenses in preparation for performance under the Memorandum of Agreement. Additionally, said representations caused Shirionit to reveal confidential pricing and sales information to its detriment.

WHEREFORE, Shirionit demands judgment against Kahn, Epstein and Druchman for (a) all damages incurred relating to the negotiation of and its entry into the Memorandum of Agreement; (b) the costs of this action; and (c) such other and further relief as this Court deems appropriate.

## COUNT II

### NEGLIGENT MISREPRESENTATION

41. Shirionit realleges and reincorporates the allegations of paragraphs 1 through 34 as though fully set forth herein.

42. During the course of the negotiations for the Memorandum of Agreement, Kahn, Epstein and Druchman represented that they had the capacity,

9

experience and resources to form a business entity to serve as an exclusive distributor for Shirionit including representations that (a) they would invest an initial $700,000 into Crescent Lock and would, upon demand and pursuant to the Shareholder Agreement, also invest up to an additional $1.5 million; and (b) they would utilize Kahn's marketing experience and resources and Druchman's facility for Crescent Lock to serve as Shirionit's exclusive distributor.

43.  Kahn, Epstein and Druchman knew or should have known their representations were false.

44.  Kahn, Epstein and Druchman intended Shirionit to rely on the representations.

45.  Justifiably relying on Kahn, Epstein and Druchman's representations, Shirionit invested and devoted significant resources to entering into and performing under a contract with Crescent Lock and also revealed confidential pricing and sales information to its detriment.

46.  Kahn, Epstein and Druchman had a duty to insure that they were going to make representations that were truthful.

47.  Kahn, Epstein and Druchman's breach of that duty was the proximate cause of Shirionit's damages.

WHEREFORE, Shirionit demands judgment against Kahn, Epstein and Druchman for (a) all damages incurred relating to the negotiation of and its entry

into the Memorandum of Agreement; (b) the costs of this action; and (c) such other and further relief as this Court deems appropriate.

*Stanley H. Eleff*

Stanley H. Eleff
Florida Bar No. 0269018
John E. Johnson
Florida Bar No. 0593000
Charles M. Harris, Jr.
Florida Bar No.967459
**TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**
Tampa, Florida 33601-1102
101 East Kennedy Blvd., Ste. 2700
Ph: (813) 223-7474
FAX: (813) 229-6553
Attorneys for Plaintiff, Shirionit Hosem Security Manufacturing (1991), Ltd.

Dated: *November 27*, 1996.

11

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE